### 18166

The PEOPLES NATIONAL BANK OF GREENVILLE, S. C., as substituted Trustee of the Trust created by the Will of Hyman Endel, Plaintiff-Respondent, v. Harold L. Hable *et al.*, some of whom are, Defendants-Appellants, and some of whom are, Defendants-Respondents.

(134 S. E. (2d) 763)

W. W. Wilkins, Esq., of Greenville, for Appellants, *People National Bank of Greenville, S. C., as Executor of the will of Hortense Endel Reisenfeld, Deceased,* and *Joan Simon Mikell,*

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Defendants-Appellants, Harold L. Hable, Howard L. Schloss, Beatrice L. Rosenthal and the Administrator, C. T. A.* and *Trustees for Estate of Jerrold N. Schloss, Deceased,* and *Price & Poag,* of Greenville, *for Defendants-Appellants, Albert M. Endel, Frances E. Horkheimer, Mathilde E. Scheur, Irma E. Spitzer* and *Carolyn E. Printz,*

*Messrs. Traxler & Turner,* of Greenville, *for Defendants-Appellants, Marcus Endel, Jr., Ida C. Burkhim, Sophie Neal, Louis J. Burkhim, Fanny Endel, Annie D. Endel, Rosalie Endel Cohen, Louis E. Altmayer* and *Babette Altmayer Benjamin,*

*George F. Townes, Esq.,* of Greenville, *for Defendants-Respondents, Julius Gruber, Grace G. Goldstrom* and *Louise P. Kruger,*

*W. W. Wilkins, Esq.,* of Greenville, *for Appellants, Peoples National Bank of Greenville, S. C., as executor of the will of Hortense Endel Reisenfeld, deceased,* and *Joan Simon Mikell, in Reply.*

February 11, 1964.

BRAILSFORD, Justice.

This is an action to construe the will of Hyman Endel, who died testate in 1925. We quote those clauses of the 1922 will pertaining to testator's residuary estate, a part of which is in controversy:

"11TH: All of the rest and residue of my estate, both real and personal, I give, bequeath and devise as follows: one-half ($\frac{1}{2}$) thereof to my wife Frances Endel and one-fourth ($\frac{1}{4}$) thereof to my daughter Hortense Riesenfeld, said shares to be the absolute property of my said wife and said daughter.

"12TH: The remaining one-fourth ($\frac{1}{4}$) of the residue of my estate I will, bequeath and devise unto my wife Frances Endel and my daughter, Hortense Riesenfeld, in trust for the following purposes to invest said portion of my estate in income bearing securities and to pay over the income arising therefrom to my daughter Bernice Endel during the period of her natural lifetime and at her death then to divide said share of said residue equally between my said wife and my said daughter Hortense; in the event that either should die before said time for the division of said portion of the residue of my estate, then I give, bequeath and devise the share of such deceased one to the survivor of the two. In order to provide the income for my daughter Bernice I hereby give to the said trustees full power and authority to sell the said securities or any part thereof from time to time as they may think best and to reinvest the proceeds thereof in other income bearing securities, giving also full power to make resales of such securities as often as may be and whenever necessary for the same purpose.

"13TH: For the purpose of making division of the residue of my property as hereinabove provided, I direct my Executors to have all my property, both real and personal, appraised by three distinterested persons, and that

the beneficiaries of said residue shall have the right by agreement to divide said property and securities among themselves in the proportions hereinabove set forth and if said beneficiaries are unable to agree upon such division, I direct my Executrices to sell said property including real estate and such securities, and to divide the proceeds as hereinabove set forth; after the death of my daughter Bernice, I desire the division of the property devised and bequeathed in trust for her to be made in the same way, Mrs. Endel and Hortense sharing equally therein, and if only one survive she to take the entire interest."

The wife and two daughters, named in the above quoted items of the will, survived the testator. Frances was childless and sixty years of age at testator's death. She died testate in 1937. Hortense and Bernice were, respectively, 39 and 33 years old and Bernice was mentally retarded. Hortense died testate on December 15, 1958, and Bernice died the following August. The genesis of the controversy lies in the failure of the will to deal explicitly with the very event which has occurred, the death of both Frances and Hortense in the lifetime of Bernice.

The Master for Greenville County, to whom the action was referred, filed his report, finding that the remainder interests of Frances and Hortense in the fund were contingent upon their surviving Bernice and that the fee, not having been disposed of by the will, passed as intestate property to testator's heirs as of his death in 1925.

Exceptions to the report were heard by Honorable James Hugh McFaddin, Presiding Judge, and sustained. The circuit decree held that the remainder interests vested in Frances and Hortense upon the death of testator, subject however, to "alternative divestment between them; 'in the event that either should die before said time for the division of said portion of the residue of my estate' leaving 'either' (one or the other) as 'the survivor of the two', if such event occurred, only then, 'if only one survive, she to take the entire interest.' (Parenthesis added)" The de-

cree directed the division of the property between the representatives of Frances and of Hortense, holding that, since neither survived Bernice, the condition on which the share of one was to be divested in favor of the other did not occur.

Joan Simon Mikell, the sole beneficiary under Hortense's will, appealed, claiming the entire fund as representative of the survivor of the two remaindermen, in whom the share of the other vested under the terms of the will.

Two other groups of parties, all of whom have interests in the property under the construction of the will adopted by the master, appealed, contending that the court erred in not holding that the reversionary interest passed to testator's heirs as intestate property.

The respondents are remote representatives of Frances. They, of course, support the conclusion of the circuit court that the will created vested remainders in Frances and Hortense, subject to divestment in favor of the survivor of the two, but only if such survivor also survived the life tenant.

The first question to be decided is whether the 12th item of the will created vested interests in Frances and Hortense, to be enjoyed by them in the future, unless, as to either, her interest should be divested by the happening of a condition subsequent. In other words, were the interests devised to Frances and Hortense by item 12 vested or contingent?

"The law favors the vesting of estates at the earliest time possible; and no remainder will be construed to be contingent which may consistently with the intention be deemed vested. * * *

"'* * * [F]or, wherever there is a particular estate, the determination of which does not depend on any uncertain event, and a remainder is thereon absolutely limited to a person *in esse* and ascertained, in that case, notwithstanding the nature and duration of the estate limited in remainder may be such, as that it may not endure beyond the

particular estate, and may therefore never take effect or vest in possession, yet it is not a contingent, but a vested, remainder. * * * The present capacity of taking effect in possession, if the possession were to become vacant, and not·the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent.' * * * 'A vested remainder is one the owner of which has the present capacity of taking the seisin in case the particular estate were to determine. But no degree of uncertainty as to the remainderman's ever enjoying his remainder will render it contingent, provided he has by the limitation a present absolute right to enjoy the estate the instant the prior estate should determine.' * * *

* * *

"While a contingent remainder is one limited to take effect either to a dubious and uncertain person or upon a dubious and uncertain event, it does not follow that every remainder which is subject to a contingency or a condition is therefore a contingent remainder. The condition may be precedent or it may be subsequent if the former, the remainder is contingent; if the latter, it is vested, though it may be divested by the happening of the condition." *Walker v. Alverson,* 87 S. C. 55, 68 S. E. 966, 30 L. R. A., N. S., 115.

By the terms of this devise, the persons to take were certain and the event on which they were to take was bound to occur. Enjoyment of the estate was postponed for no other purpose than to provide for Bernice during her lifetime, and the existence of the preceding estate was the only impediment to the enjoyment of the estates in remainder. When the will took effect, Frances and Hortense had the present capacity to take the instant the life estate should determine. Therefore, the remainders were vested, although each was subject to alternative divestment upon the happening of the specified condition subsequent.

The will, by explicit language, made the death of either Frances or Hortense, before the termination of the life estate, survived by the other, the condition for divesting the interest of the decedent and transferring it to the survivor of the two. This is the testamentary language: "in the event that either should die before said time for the division of said portion of the residue of my estate, then I give, bequeath and devise the share of such deceased one to the survivor of the two."

Frances died twenty-two years before the time for division, leaving Hortense as the survivor of the two. This was the very condition upon which, by the terms of the will, Frances' interest was divested and transferred to Hortense, in whom the entire interest in remainder, thereupon, became vested. The death of Frances satisfied the condition on which the estate of either remainderman was subject to being divested. Nothing remained, certainly not in item 12, which could have the effect of postponing the vesting of this interest. The necessary consequence of the terms of item 12 is that Hortense succeeded to the same position on Frances' death as she would have occupied had the entire interest in remainder been devised to her in the first instance. The case is the same as though the devise had been to trustees to pay the income to Bernice during the period of her natural life and at her death to Hortense.

From 1937 until her death on December 15, 1958, Hortense " 'was in a condition to take under the will whatever passed by the will. The will gave (her) a portion of the property, with a direction that it be allotted to (her) on (her) (sister's) death. (She) could have taken it the day of (Frances') death and was withheld only by the preferable right of enjoyment which the will conferred on (her) (sister). Nothing but that prevented (her). Here, then, was a present capacity to take whenever the possession should become vacant. This is the test of a vested interest, *and an interest vested is*

*not lost by the dying of the person. in whom it exists (vests) before the period of its being actually enjoyed.* That only transmits,. in the case of realty, to his distributees or legatees, and, in the case of personalty, to· his representatives.' " (Emphasis added.) *Brown v. McCall,* 44 S. C. 503, 516, 22 S. E. 823, 829.

The elements of a vested remainder are clearly present and this construction accords with the testator's intention as expressed in his will. His language indicates advertence to the nature of the estates created and an intention that they should vest in interest immediately. The will expressly refers to the termination of the life estate as the *"time for division* of said portion of the residue," instead of as the time for ascertaining the interests of the remaindermen. On the death of one remainderman before the time for division " the *share* of such deceased one" was given to the other. This language points unmistakably to an intention to create vested remainders. Otherwise, the one dying before time for division would not have had a share to be transferred to the other.

It is' hornbook law that a vested interest created by will may not be defeated except on the happening of some condition of defeasance expressed in the will. *Kersh v. Yongue,* 28 S. C. Eq. (7 Rich. Eq.) 100; *Gourdin v. Deas,* 27 S. C. 479, 4 S. E. 64; *Woodley v. Calhoun,* 69 S. C. 285, 48 S. E. 272.

Respondents rely upon item 13 as requiring that Hortense must have survived the life tenant as a condition precedent to the operation of the excutory devise in· favor· of "the ·survivor of the two" remaindermen. Quoting from the brief, "Until it appeared that one or the other of the two remaindermen was living àt the death of Bernice the gift over could not· take effect." This, in effect, adds a condition which the will does not express. The clear and· unambiguous limitation over· is · to ·take effect upon the death of a remainderman before the ·time for division and for .the ·benefit of the ·survivor of the two. There is

no question but that the reference to survivorship is to one remainderman surviving the other. The entire clause is inoperable unless one remainderman dies, leaving the other surviving, during the continuance of the life estate. In which event, by clear words of present gift, ("give, bequeath and devise") the share of the deceased one is given to the survivor. See Restatement, Property, Sec. 257.

On this aspect of the case we deal only with Frances' original moiety and, in the light of hindsight, the case is exactly the same as though the devise of the estate had been *to Bernice for life and after her death to Frances and in the event that Frances should predecease Bernice then to Hortense.* The following rule, which was quoted with approval by the Supreme Court of the United States in *Doe ex dem. Poor v. Considine* (1868), S. C., 6 Wall. 458, 476, 18 L. Ed. 869, 875, furnishes a blue print for the construction of this limitation:

" * * * 'Where a remainder is limited to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to determine by an event that must unavoidably happen by the efflux of time, the remainder vests in interest as soon as the remainderman is *in esse* and ascertained, provided nothing but his own death before the determination of the particular estate, will prevent such remainder from vesting in possession; yet, if the estate is limited over to another in the event of the death of the remainderman before the determination of the particular estate, his vested estate will be subject to be devested by that event, and the interest of the substituted remainderman which was before either an executory devise or a contingent remainder, will, if he is *in esse* and ascertained, be *immediately converted into a vested remainder'.*" (Emphasis added.)

Before Frances' death, Hortense owned a vested remainder in one-half of the fund, which was subject to divestment if she predeceased Frances before the determination of the life estate. At Frances' death, Hortense, as ex-

ecutory devisee, took the remaining one-half interest in the fund and the executory devise was "immediately converted into a vested remainder." *Doe v. Considine, supra.*

We have carefully considered the will as a whole and find nothing which is inconsistent with our conclusion. Item 13, was inserted to direct the manner in which the division of the property, as specified in items 11 and 12, was to be accomplished. It was not intended to be dispositive. Being for the purposes of division only, the last eleven words, on which virtually the entire contrary argument is founded, are surplusage, no division being needed of a fund or estate in which one survivor is to take the "entire interest."

Item 13 is not inconsistent with item 12. It is simply incomplete and does not deal with the events which occurred. Hortense's representative is not put to the necessity of claiming under item 13. She claims instead under item 12, by the clear language of which a one-half interest in the remainder vested in Hortense when the will took effect, and the other one-half interest vested in her upon the death of Frances. This unequivocal gift can not soundly be deemed cut down by the language relied upon in item 13, which, to say the least, is of doubtful import. *Rogers v. Rogers,* 221 S. C. 360, 70 S. E. (2d) 637, and authorities therein cited.

No South Carolina case has been cited or come to our attention which involved a devise similar to this one; *i. e.,* to A for life, and after his death to B and C, and in case either of them dies in the lifetime of A the whole to the survivor of them. The following decisions did involve similar limitations and lend support to the conclusion we have reached: *White v. Baker* (1860), 2 DeG. F. & J. 53, 45 Eng. Reprint 542; *Scurfield v. Howes* (1790), 3 Bro. Ch. 90, 29 Eng. Reprint 425; *Leahy v. Murray* (1959), 16 Ill. (2d) 350, 158 N. E. (2d) 30; *Bank of Delaware v. Goldey* (1961), Del. Ch., 176 A. (2d) 199; *In re Latham's Estate* (1928), 133 Misc. 36, 231 N. Y. S. 414; *In re*

*Merriman's Estate* (1938), 168 Misc. 932, 6 N. Y. S. (2d) 692; *In re Collins' Will* (1948), Sup., 81 N. Y. S. (2d) 838.

We have not referred to the exceptions of those appellants who advocate the view that the remainder interest in this property should go to the heirs-at-law. They are necessarily overruled by our decision that the remainder was vested and transmitted to Joan Simon Mikell by the will of the remainderman.

Reversed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.